IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ANTONIA KNIGHT, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 4:21-CV-00865-MDH |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| **Defendant.** | ) |

## ORDER

Before the Court is Plaintiff Antonia Knight's appeal of Defendant Social Security Administration Commissioner's denial of her application for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. Plaintiff exhausted her administrative remedies, and the matter is now ripe for judicial review. After carefully reviewing the record, the Court finds that the administrative law judge's (ALJ's) decision did not comport with the legal standards required by 20 C.F.R. § 416.920c(b)(2) and the decision is reversed and remanded.

## BACKGROUND

Plaintiff filed two applications under the Social Security Act ("Act")—an application for disability insurance benefits under Title II, 42 U.S.C. §§ 401, *et seq.*, and an application for supplemental security income under Title XVI, 42 U.S.C. §§ 1381, *et seq*. (Tr. 254-66). Plaintiff's applications were denied initially, after which she appealed the denials to an ALJ. (Tr. 1-111). On February 26, 2021, the ALJ found Plaintiff was not disabled. (Tr. 8-27). On October 5, 2021, the

1

Appeals Council denied Plaintiff's request for review. (Tr. 1-5). The ALJ's decision is accordingly the final decision of the Commissioner, over which this Court has judicial review. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff protectively filed her application October 22, 2019. (Tr. 11). She alleged disability beginning September 15, 2018, due to major depression, social anxiety, generalized anxiety, PTSD, mood disorder, IBS, EGE, Rheumatoid Arthritis, and scoliosis. (Tr. 213, 260). The ALJ found at the outset Plaintiff did not qualify for disability and disability insurance benefits under Title II, as Plaintiff's alleged disability onset date of September 15, 2018, occurred before her insured status expired September 30, 2016. (Tr. 11). The ALJ further found Plaintiff suffers from the following severe impairments: peripheral neuropathy, depressive disorder, PTSD, and personality disorder. (Tr. 14). The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 CFR 416.967(b) with additional limitations. (Tr. 16-17).

Plaintiff's brief raises two arguments for why this Court should reverse the decision of the ALJ. First, Plaintiff argues that ALJ's decision should be reversed because the ALJ improperly and insufficiently assessed opinions from Dr. Lowery and Nurse Aboud in reaching her determination. (Doc. 13 at 1). Second, the ALJ failed to provide good reasons for discounting Plaintiff's reports of bad days caused by Plaintiff's mental health issues. (Doc. 13 at 1). Defendant argues generally that this Court should affirm the ALJ's order because substantial evidence supports the ALJ's findings about persuasiveness and that the ALJ properly and sufficiently assessed opinions from Dr. Lowery and Nurse Aboud. (Doc. 16 at 4-7). Defendant further argues substantial evidence supported the ALJ's assessment of Plaintiff's subjective reports. (Doc. 16 at 10).

**STANDARD**

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. *See* 42 U.S.C. §§ 405(g), 1383(c)(1)(B)(ii)(3). Substantial evidence is less than a preponderance of the evidence and requires enough evidence to allow a reasonable person to find adequate support for the Commissioner's conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Freeman v. Apfel*, 208 F.3d 687, 690 (8th Cir. 2000). This standard requires a court to consider both the evidence that supports the Commissioner's decision and the evidence that detracts from it. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). That the reviewing court would come to a different conclusion is not a sufficient basis for reversal. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). Rather, "[i]f, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Id.* (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)).

Courts "defer heavily to the findings and conclusions of the Social Security Administration" and will disturb the Commissioner's decision only if it falls outside the "zone of choice." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). Incorrect application of a legal standard is grounds reversal, *Ford v. Heckler*, 754 F.2d 792 (8th Cir. 1985), but the Court defers to the ALJ's determinations of the credibility of witness testimony, as long as the ALJ's determinations are supported by good reasons and substantial evidence. *Pelkey v. Barnhart,* 433 F.3d 575, 578 (8th Cir. 2006). Finally, while a deficiency in opinion writing is not enough to merit reversal where it has no practical effect on

3

the outcome, incomplete analyses, inaccuracies, and unresolved conflicts of evidence may be a basis for remand. *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000).

## DISCUSSION

**I. The ALJ failed to properly assess opinions from Dr. Lowry and Nurse Aboud**

Plaintiff argues the ALJ committed error when: 1) the ALJ failed to comply with the minimum articulation requirements identified in the relevant regulations; and 2) the ALJ's conclusions about supportability and consistency lacked substantial evidence. The medical opinion from Nurse Aboud in question consists of a three-page form with checked boxes in which the nurse concludes, *inter alia*, Plaintiff's mental diagnoses would cause Plaintiff to miss work about four days during a given month. (Tr. 475-77). Nurse Aboud also offers medical opinion in numerous other parts of the record in addition to the form. (e.g., Tr. at 684, 698-702). This opinion reflects professional impressions during various clinical visits in which Nurse Aboud served as Plaintiff's medical provider. Dr. Lowry's medical opinion consists of the same form, in which Dr. Lowry also concludes Plaintiff's mental diagnoses would cause Plaintiff to miss work about four times monthly. (Tr. 831-33). Dr. Lowry's medical opinion also consists of other impressions and evaluations documented throughout other areas of the record reflecting Dr. Lowry's time as one of Plaintiff's providers. (e.g. Tr. at 627-28, 633-34, 647-48). In the completed form, Nurse Aboud and Dr. Lowry concluded Plaintiff suffers from limited functioning with respect to certain specific tasks, though the opinions sometimes depart in terms of the severity of the limitations. (Tr. 475-77; 831-33).

The relevant regulation provides that when considering "medical opinion(s) and prior administrative medical finding(s)," the ALJ will consider: supportability; consistency; relationship

between the provider and claimant; the provider's specialization; and any other relevant factors like the provider's familiarity with the social security process. 20 C.F.R. § 416.920c(c). The regulation goes on to clarify the following.

> The factors of supportability…and consistency…are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. 20 C.F.R. § 416.920c(b)(2).

As for supportability, the regulation instructs, "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)…the more persuasive the medical opinions…will be." 20 C.F.R. § 416.920c(c)1. As to consistency, "the more consistent a medical opinion…is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion…will be. 20 C.F.R. § 416.920c(c)2.

The ALJ found Plaintiff's most "pressing impairments are mental" (Tr. At 17). The ALJ also found Plaintiff has been attending counseling sessions during the relevant period, suffers bouts of depression and anxiety including suicidal ideation, but has demonstrated improvement in mental health functioning with continued treatment. (Tr. at 17). The ALJ also notes that the record reflects some inconsistency between Plaintiff's subjective description of her symptoms and the available evidence as a whole. Specifically, the ALJ notes Plaintiff's symptom severity alleged during the disability hearing is inconsistent with documentary records of treatment showing improvement over time. (Tr. at 18).

The ALJ then states she considered but found unpersuasive opinions from Nurse Aboud. This is due largely, the ALJ explains, to the limited nature of the form on which the opinion was submitted, lack of evidence supporting the conclusions in the form, and the opinion reflecting self-

5

assessments from Plaintiff. (Tr. at 18). The ALJ then states, "more importantly, the associated opinions thereby expressed [in Nurse Aboud's evaluation] are inconsistent with records of treatment and the record as a whole as previously discussed and referenced." (Tr. at 18). The ALJ then explains she also considered medical opinion from Dr. Lowry, though likewise found this opinion unpersuasive. This is because, the ALJ contends, the opinion lacks any supporting evidence for the described marked and extreme limitations, apart from boxes ticked on the evaluation form. Inconsistency between Dr. Lowry's opinion and the record evidence as a whole, also caused the ALJ to find Dr. Lowry's opinion unpersuasive.

While Nurse Aboud's and Dr. Lowry's forms themselves do not appear to include any attachments, the record includes various other opinions from Nurse Aboud and Dr. Lowry. (e.g., Tr. at 627-28, 633-34, 647-48, 684, 698-702). Notably absent from the ALJ's discussion about Nurse Aboud's and Dr. Lowry's opinions, however, is any reference to the medical opinion offered by Nurse Aboud and Dr. Lowry outside the completed forms, even though some of the specific findings in other places of the record appear to support the general conclusions expressed in the forms. (e.g. Tr. at 629, 701). For example, after an office visit in October 2020, Dr. Lowry observed the following.

> Patient reports that she has been having visual hallucinations more frequently, about 2 to 3 times per week. Patient states that sometimes there is a high hum that comes from the shadowy image. Patient states that she is not typically fearful of the image, nor has it ever spoken to her. Patient states that she has seen this image at various times in the past but will go years without seeing it. Patient reports the image just recently started appearing again. Tr. at 629.

The above observation reasonably supports Dr. Lowry's finding expressed in his form that Plaintiff suffers from an extremely limited ability to "complete a normal workday and workweek without interruption from psychologically based symptoms." (Tr. at 832). The ALJ's brief description of

why opinions from Nurse Aboud and Dr. Lowry were discounted, however, fails to account for any consistency between the providers' clinical observations and conclusions about functioning.

Because the ALJ fails to discuss the medical opinions of Nurse Aboud and Dr. Lowry apart from what the providers include in the generic forms, it remains impossible to discern how consistent the ALJ believes Nurse Aboud and Dr. Lowry's opinions to be, let alone how such consistency, or lack thereof, impacts the ALJ's conclusion about workplace functioning. The ALJ's failure to acknowledge and discuss a broader portion of Nurse Aboud's and Dr. Lowry's opinions also precludes any insights into the ALJ's understanding about the relevance of Nurse Aboud and Dr. Lowry's opinions to the ALJ's broader findings about Plaintiff's work-related functioning, as required by the regulation surrounding supportability.

Plaintiff further argues that the ALJ lacked substantial evidence as to both the supportability and consistency of Nurse Aboud's and Dr. Lowry's decisions. Defendant argues that when the ALJ's opinion is considered as a whole, it becomes clear the ALJ considered the entirety of the record evidence evaluating and discussing supportability and consistency. While substantial evidence may have supported the ALJ's evaluation of the supportability and consistency of Nurse Aboud's and Dr. Lowry's opinions, the failure to more fully discuss or even acknowledge certain parts of the medical record, particularly the portions of Nurse Aboud's and Dr. Lowry's opinions that support their conclusions about functioning, render it impossible to determine if substantial evidence supported the ALJ's evaluation. "Although a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency had no practical effect on the outcome of the case, *see Senne v. Apfel,* 198 F.3d 1065, 1067 (8th Cir.1999), the ALJ is not free to ignore medical evidence but rather must consider the whole record." *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000). For this Court to conclude substantial evidence

supported the ALJ's evaluation, the description of the evaluation must include discussion of various parts of record evidence, some of which does appear generally supportive of Nurse Aboud's and Dr. Lowry's findings as to functioning limitations.

## II. Substantial Evidence Supports the ALJ's Findings as to Plaintiff's Self-Reported Bad Days

Plaintiff next argues that the ALJ failed to provide good reasons supported by substantial evidence for discounting reports about bad days due to Plaintiff's mental health impairments. Specifically, Plaintiff takes issue with the ALJ's description of the evolution of Plaintiff's symptoms over time. Only a selective reading of the record evidence, Plaintiff contends, supports the ALJ's description of an upward trajectory of Plaintiff's mental health conditions. Plaintiff argues her symptoms have continuously waxed and waned throughout the relevant period, without reliable signs of sustained improvement. Defendant argues the ALJ never found that Plaintiff was symptom-free, only that substantial evidence, particularly Plaintiff's mental status reports, support the ALJ's conclusion that Plaintiff had generally made improvement with respect to her mental health impairments during the relevant period.

In determining the persistence and the extent to which symptoms limit workplace functioning, the ALJ follows a two-step process. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017). First, the ALJ looks for an "underlying medically determinable physical or mental impairment that could" reasonably lead to the symptoms alleged. *Id*. Second, once such an impairment is established, the ALJ "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. *Id*. As Plaintiff explains, the ALJ's evaluation, "must contain specific reasons for the weight given to the individual's symptoms, be

8

consistent with and supported by the evidence, and be clearly articulated." *Soc. Sec. Ruling 16-3p: Titles II & Xvi: Evaluation of Symptoms in Disability Claims,* SSR 16-3P (S.S.A. Mar. 16, 2016).

The ALJ concludes in part that "with continued mental health treatment, the claimant has reported and exhibited improvement in her functioning." (Tr. at 17). The ALJ cites to several specific portions of the record in support. A close review of the evidence to which the ALJ cites as well as other portions of the record, demonstrates an upward trend in Plaintiff's symptoms and functioning. For example, throughout September and October 2020, Plaintiff regularly reports improved moods, more effective use of coping skills, better sleep, and more positive effects from prescription medication. (See, e.g. Tr. at 623, 625, 743). During this same period, Plaintiff reports feeling excited for an upcoming birthday party she planned for her child (Tr. at 623) and also reports that another joint birthday party she planned for her husband and other child had been a success. (Tr. at 743).

This contrasts with Plaintiff's earlier medical records, which demonstrate less success in treating her mental impairments. For example, in July 2020, Plaintiff reported to providers that "things were going okay," "Prazosin is working," and a reduction in nightmares. (Tr. at 601). During the same appointment, however, Plaintiff reported "strong urges to self-harm," "anxiety is very high at night," and "feeling angry to the point she wants to hit something." (Tr. at 601). Plaintiff's treatment record also reveals little if any sustained success from June through November 2019. (Tr. at 478, 489, 504, 505, and 537). During this period, Plaintiff generally reports continued symptoms of depression and few if any changes in her mood. It is correct, as the ALJ notes, that Plaintiff reported and the provider observed, an improved mood during the appointment on November 6, 2020 (Tr. at 522). This, however, appears to be a temporary change, as Plaintiff reported a worsened stated during her next appointment. (Tr. 537). Notably, while Plaintiff

reported a suicide attempt in 2018 (Tr. at 436, 779), treatment notes from 2020 reflect a consistent denial of any suicidal thoughts. (See, e.g. Tr. at 627, 633, 647, 658). Collectively, this demonstrates substantial evidence supports the ALJ's finding that Plaintiff's mental impairments improved over time. The ALJ's specific citations to record evidence for this upward trajectory (Tr. at 17), as well as the ALJ's discussion of discrepancies between Plaintiff's self-reported functioning at the time of the disability hearing and this upward trajectory (Tr. at 18), show the ALJ satisfied the regulatory reporting requirements.

## CONCLUSION

Accordingly, it is **ORDERED** that the case be remanded and the Commissioner's determination denying Plaintiff's application for supplemental income under Title XVI of the Social Security Act is reversed. On remand, the ALJ is required to comply with 20 C.F.R. § 416.920c(b)(2) with respect to evaluating the supportability and consistency of all medical opinion evidence.

**IT IS SO ORDERED.**

Dated: March 17, 2023  　　　　　　　　　　　　　　　　　　　/s/ Douglas Harpool
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**DOUGLAS HARPOOL**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**